Ms. Thompson? May it please the Court, my name is Catherine Thompson, and I represent the appellant, Juan Lascano. Mr. Lascano was incompetent in 2007, and he was tried in violation of his fundamental due process rights because his trial counsel performed ineffectively. I'd like to focus on three main points today, in addition to answering any questions from your honors, of course. The first is that Mr. Lascano overcomes ad pedeference to the state court's determination on deficient performance under D-1 alone because the state court unreasonably applied the rule clearly established in Strickland and its progeny that strategic decisions based on less than complete investigation are reasonable only to the extent that reasonable professional judgment supports the limitation on investigation. Second, to the extent this court considers the state court's factual findings on deficient performance, those findings are rebutted by clear and convincing evidence, and the court's ultimate determination is unreasonable under D-2. And finally, the state court's finding that there was no evidence that Mr. Lascano had not been competent when his counsel abandoned competency proceedings is clearly rebutted by the record, including by highly relevant evidence that is not even mentioned in the state court opinion, and Mr. Lascano overcomes ad pedeference as to prejudice. Beginning with my first point, at the time counsel withdrew Mr. Lascano's competency motion, the overwhelming majority of evidence showed he was not competent. This included his diagnosis of intellectual disability, which was based in part on IQ scores ranging from 48 to 62, neuropsychological testing revealing that Mr. Lascano had significant impairments in attention, concentration, and learning, and in his ability to understand, process, recall, and respond to information. Mitigation memos documenting that Mr. Lascano had exhibited these same impairments throughout his life, the defense team's own difficulties communicating with Mr. Lascano, and counsel's inability to engage him in any way during voir dire proceedings despite having repeatedly explained the process to him, and the opinions of two qualified defense experts. The only relevant evidence suggesting that Mr. Lascano was competent was an oral opinion from Dr. Flynn, which was delivered via a phone call to the trial court. Yet upon hearing this finding, and without asking Dr. Flynn a single question, let alone reviewing his report or any of his data, counsel simply abandoned competency proceedings altogether. What do you do about the presumption of correctness afforded to the state habeas courts finding that Dr. Lorente was not credible? So state habeas expert Dr. Lorente submitted two opinions. One was about Mr. Lascano's intellectual disability, and he also opined that Mr. Lascano, he submitted a retrospective opinion that Mr. Lascano had not been competent as of 2007. The credibility determination by the state court was quite narrow. It went to Dr. Lorente's use of one test, the Abbess, which is not designed to be retroactively applied, as Dr. Lorente admitted or recognized in his habeas testimony, and he also explained that the Abbess was just one of many sources that he considered in conducting his adaptive analysis deficits. In any event, as this court knows, in subsequent state court proceedings, Mr. Lascano was determined to be a person with intellectual disability, and that determination was based in part on Dr. Lorente's evidence, testing, and testimony in the 2012 proceedings. So that credibility finding as to Dr. Lorente's use of the Abbess has no continued validity in this case and is simply not relevant. Returning to the facts, the evidence known to counsel at the time they abandoned competency proceedings, the state court had determined that counsel acted reasonably because they didn't think they would prevail at a competency trial, given that defense expert Dr. Martinez had based his opinion on his clinical evaluation as opposed to the Texas competency statute and was thus likely to be seen as less credible as Dr. Flynn, and counsel wanted to temporarily delay disclosure to the prosecutors of evidence that was already in the hands of the state's expert. But counsel's assessment of their likelihood of prevailing at a competency trial was based on a professionally unreasonable investigation. Given the evidence known at the time, a reasonable attorney would have at a minimum obtained Dr. Flynn's report and underlying data and shared that information with their own experts. A reasonable attorney would have reviewed the Texas competency statute with Dr. Martinez to determine whether the data he gained through his clinical evaluation allowed him to address the six factors identified in that statute. And to the extent that counsel continued to harbor doubts about the strength of Dr. Martinez's forensic evaluation. Had counsel undertaken these minimal steps, they would have known that Dr. Flynn had failed to properly evaluate Mr. Lascano's intellectual disability and hadn't had the full picture regarding his deficits as Dr. Flynn himself admitted to counsel the day after they withdrew competency proceedings. And they would have known that as a result of his flawed evaluation, Flynn failed to consider, as required by the Texas competency statute, the specific impact of Lascano's intellectual disability on his capacity to rationally and reasonably consult with counsel. Did the state habeas court address Dr. Flynn's statement? No. However, that is part of the evidence that I mentioned in my introduction that was highly relevant to the question of prejudice and also to reasonable performance. And the state habeas court makes no mention of it whatsoever. So if it's not a part of the state court's determination, then how are we to factor it into our decision? I apologize if I wasn't clear. The fact that Dr. Flynn made this admission to counsel the day after they withdrew the competency proceedings is in the state court record. Counsel testified as to that conversation, and there's an email reflecting what Dr. Flynn told Attorney Busbee in that conversation. It's just that it was simply ignored by the state court in its determinations. So, returning to what counsel would have known had they conducted a professionally reasonable investigation, they would have also known that Flynn's opinion reflected other errors and that his data actually supported a finding that Mr. Lascano was not competent. They would have known that Dr. Martinez's thorough evaluation, which was far more comprehensive than that conducted by Dr. Flynn, yielded information that in practice allowed Dr. Martinez to address each of the Texas competency factors as he confirmed during state habeas proceedings when he was specifically asked about each of those factors. And counsel would have known that a qualified forensic evaluator, such as state habeas expert Dr. Lorente, would have also found that Lascano was not competent to stand trial. And again, the state court did not address any of these investigatory failures or any of this evidence that counsel could have found through a professionally reasonable investigation. Thus, the only way this court can determine that the state court reasonably applied Strickland and its progeny is if it were to hold that trial counsel can just ignore strong evidence that their client is incompetent because they want to pursue a tactical advantage at trial. But such a holding could not be reconciled with the Supreme Court's repeated recognition that the right against being tried while incompetent is fundamental to due process because a criminal defendant who is unable to rationally communicate with counsel or understand the proceedings against him is also unable to exercise other rights deemed essential to a fair trial, including the right to participate in his defense. And such a holding would also be inconsistent with the Supreme Court's recognition that the function of defense counsel under the Sixth Amendment is to protect the dignity and autonomy of the person on trial by assisting him in making those choices that are his to make and not in making those choices for him. Turning to the state court's factual determinations on defection performance, I've already addressed two, namely the relative, supposed relative weakness of Dr. Martinez's opinion versus the supposed strength of that of Dr. Flynn. And again, both of those findings are clearly rebutted by the evidence that counsel would have discovered had they conducted a reasonable investigation. Another finding by the state court was that trial counsel subjectively believed that Lascano was competent at the time they withdrew his motion. And the court cites to the language from Medina versus California, observing that defense counsel will often have the best informed view of a defendant's ability to participate in his own defense. But everything in the record regarding counsel's interactions with their client up until the time they abandoned competency shows that Mr. Lascano was not able to participate in his defense. For instance, lead counsel Busbee found that Mr. Lascano was petrified of her and could only nod when she asked him questions or tried to communicate with him. Attorney Sanchez said Lascano couldn't keep basic facts about his own family or background straight. A memo dated some six months after counsel had been appointed reflected there were many things Lascano did not know about his legal situation, did not understand about his legal situation, including that he had to tell his lawyers things so that they could help him. The fact that counsel was unable to engage Lascano during voir dire, despite repeatedly attempting to do so, and Lascano's report that he was often bored in court because he didn't understand what was going on. That record clearly belies the single conclusory statement made by attorney Busbee when she withdrew the competency motion saying, we believe Lascano to be competent. Finally there was a state court finding that counsel acted in pursuit of a tactical advantage, namely briefly delaying disclosure to the prosecutors, evidence that had been turned over to their expert weeks before. But even if true, that strategic decision was ultimately not reasonable because it was based on an incomplete investigation and no reasonable attorney would ignore the actual evidence of Lascano's incompetence in favor of such a minor tactical advantage. Our case law gives pretty strong deference to those sorts of tactical decisions on the part of the attorney. Typically yes, but as the Supreme Court and this court have recognized, the deference that courts afford to strategic decisions is premised on counsel having conducted a professionally reasonable investigation. That's why deference exists. And here counsel abandoned their investigation into competency at an unreasonable juncture and therefore the strategic decisions they made were based on faulty information and are not entitled to deference. Turning very quickly to prejudice, the state court found there was quote, no evidence that Lascano had not been competent at the time counsel abandoned proceedings, but this is easily rebutted. Even if it were proper to discount Dr. Martinez's opinion because trial counsel failed to properly prepare him, that opinion alone still rebuts the finding that there was no evidence. The same is true with all the evidence I just discussed regarding the defense team's difficulty communicating with or engaging Mr. Lascano and of course the retrospective opinion of Dr. Lorente, which is simply not mentioned in the state court opinion. Thank you, Ms. Thompson, you've saved time for about a minute. Thank you, Your Honor. Ms. Hanna. Good morning, Your Honors. I am Kara Hanna for the appellee Eric Guerrero, director of TDCJ. Opposing counsel. Pull the microphone just a little bit. Sorry about that. Should I reintroduce myself? That'd be fine, yes. Okay, great. My name is Kara Hanna and I represent appellee Eric Guerrero, director of TDCJ CID. Mr. Lascano appears to base his arguments solely on the weakness of evidence that they have to overcome their burden. However, the evidence that Mr. Lascano cites is actually weak evidence and insufficient to meet the clear and convincing evidence burden. For example, Dr. Lorente did conduct her retrospective analysis, but it is well accepted that retrospective analysis is unreliable, which also Dr. Lorente had admitted when she was in the state habeas hearing. Also, regarding the expert that they relied on, Dr. Martinez, both counsel Busbee, Mr. Sanchez, and even Dr. Martinez himself had said that his diagnosis as incompetent for Mr. Lascano was questionable. Mr.—excuse me, Dr. Martinez had said he was not prepared to testify that Mr. Lascano was competent. And this is in direct response to the trial court during the punishment phase at the 705 hearing had asked Mr.—excuse me, Dr. Martinez, are you testifying that Mr. Lascano is incompetent? And Dr. Martinez's response was along the lines of no. He said, I merely have a question as to his competency and also whether he is able to understand some of the proceedings. The standard, of course, for competency is whether you are able to or whether a defendant is able to rationally assist his counsel. But unlike Mr. Lascano's counsel today, there is no evidence in the record that Mr. Lascano had difficulty communicating with his attorneys. What we have, of course, is the voir dire that trial counsel Sanchez had attested to in his affidavit that he was concerned because Mr. Lascano had not provided input to what However, there is not only the lengthy period of time from June until September that voir dire had occurred, but also the language barrier. Although there is a translator available, Mr. Lascano perhaps had decided the best person to actually rely on is my counsel to make these decisions. In one of the competency exams that he was, excuse me, in one of the evaluations that he had been administered, he had said that he would essentially defer to his counsel, that counsel he trusted. And related also, to wind back to the evidence that is not clear and convincing, that would also, excuse me, regarding, I have lost my train of thought. I apologize. Thank you, Your Honor. As far as clear and convincing evidence goes, the only actual forensic examination that was administered was by Dr. Flynn. And he had arrived at the conclusion that Mr. Lascano was competent. The other neuropsychologists that were consulted by defense counsel had said, well, Dr. Martinez had said it was clinical only. And, yes, as opposing counsel today has said, Dr. Martinez was informed by and had asked several questions that he felt provided support for his clinical conclusion that Mr. Lascano was incompetent. But, again, he not only questioned, Dr. Martinez not only said he was unwilling to testify to that, but also admitted during the hearings that he actually could not answer at least one to two of those questions under the factors for incompetency. He did not ask Mr. Lascano those questions. Wasn't that because he felt he wasn't qualified to give an opinion on the legal definition of competency? Yes, Your Honor. He had testified that at the time of trial he had performed somewhere between two and four competency evaluations that were forensic in nature that he had, I believe, participated in. And so he had felt that he was not qualified but still informed to make the decision in support of Mr. Lascano's incompetency. But, ultimately, this was insufficient evidence and Mr. Lascano cannot now rely on either his or Dr. Lorente's retrospective conclusion. Again, retrospective conclusions are not reliable. And, also, they aren't actually able to properly assess at the time whether an individual is incompetent, whether they're not able to communicate and whether they're not able to direct or understand what's happening with them. I'd also like to rewind to Mr. Lascano's ability to—excuse me, ability to communicate with his attorneys. Opposing counsel said that—Counsel Busbee had said that Mr. Lascano feared her. That was her impression. She had also said that Mr. Lascano appeared to prefer Mr. Sanchez and that Mr. Lascano would light up whenever he saw Mr. Sanchez. That could possibly be because Mr. Sanchez not only spoke native—excuse me, Spanish as a native speaker, but also the same Spanish—that's, excuse me, like dialect of Mr. Lascano who grew up in a rural part of Mexico. And so, if anybody would be able to determine what communication issues would have been Mr. Sanchez. And so, it's fair to say that when at the time the motion to proceed with the competency proceedings were withdrawn by counsel, they had the best seat to determine whether their client was able to participate as necessary, perhaps not in every single stage, perhaps—or excuse me, perhaps not with every single question. And like in Dr. Flynn's evaluation, no, Mr. Lascano cannot answer every single question. But I don't think that there is—I don't think that's a rare occurrence. But moving on again with communications, it would be, I want to say, to suggest that Mr. Willey-Nilley, their motion for competency proceedings is baseless. They had their— Did the trial court state on the record that there was sufficient evidence to proceed to a competency hearing? Yes, Your Honor. After his first determination that there was not sufficient evidence to move on, he did find that there was, Your Honor, sufficient evidence. How does that cut against your argument? And so the requirement for a bona fide doubt being raised to competency is evidence. Yes, Your Honor. But as far as this was supplemented by Dr. Puente's—Dr. Martinez's affidavit along with Counsel Sanchez's affidavit, and if I'm remembering correctly, the motion was first submitted with Mr. Sanchez's affidavit that said he had that concern of Ordeir. So while there—I misspoke earlier—there is not clear and convincing evidence for, first, Mr. Liscano now to overcome the finding of fact by the state habeas court adopted by the CCA that, in fact, Mr. Liscano was competent at the time, but also consideration that both counsel were required, I believe Ms. Busbee had said, ethically and legally to move forward if they had felt Mr. Liscano was incompetent. But also suggest strongly that they did not feel they had an actual basis to move forward with those proceedings. They were informed by their familiarity with the state's expert, with also the court-appointed expert had been the neutral court-appointed neuropsychologist and forensic psychologist so that they understood there was a certain finding that Mr. Liscano was competent. They rightfully could have determined that based on their iffy and shaky opinion of their expert would not have been sufficient to overcome in a jury trial the court-appointed neuropsychologist. The weight that the jury might have given as far as credibility, understanding bias with the defense counsel's witness, all of those factors would have played into counsel's decision to withdraw their motion for competency proceedings. And unlike what opposing counsel now says, this is not a matter of whether trial counsel waived their client's right to be tried as a competent individual. Instead, what we have is did trial counsel strategically elect to move forward with, or excuse me, to withdraw their motion for competency proceedings based on not just their strategy but unlike opposing counsel, their informed strategy. Again, other than the familiarity with the experts I mentioned before, they had conducted extensive investigation. Their mitigation specialist had visited Mexico at least five, she said perhaps six times, had spoken with numerous family and friends, I believe she said over 60 witnesses. And their focus was to show that Mr. Liscano was intellectually disabled because that was their best hope given the overwhelming evidence of Mr. Liscano's guilt that they would be able to obtain a life sentence since, of course, Atkins had just come down and they were focused on their client, if proven to be intellectually disabled, would be ineligible to be executed. So they had all of this information where that informed their strategy to keep all of this information out of the state's hands. And yes, they did have to turn over some of the materials that their experts had relied on, but at that time the materials were incomplete. They had said that Ms. Nathan was still preparing some reports, but ultimately since the investigation that they had conducted was so thorough, it was reasonable for trial counsel to have believed, and I think the record also shows, that their investigation was reasonable. It hasn't been said what additional investigation could have done, what additional investigation would have revealed, other than a perhaps correlation between intellectual disability and incompetence. But those are not the same things. You can be intellectually disabled and still be competent. There isn't a rule that says if you are intellectually disabled, you are per se incompetent. Now, trial counsel Busbee had found a footnote in a law article, or I believe it was a law article, that had said perhaps that could be the case. She had said that was her strategy, even in raising this question and her motion for competency proceedings in the first place. Supplemented, of course, by Mr. Sanchez's affidavit that says he was merely concerned at the stage of or dire because Mr. Lizcano had deferred to him and wasn't providing input on which jurors should be struck, which again, a period between June and September, to listen to everyone and all the questions they were asked. And it's reasonable that even if he weren't a native Spanish speaker, that anyone would really have trouble keeping straight four, three months of testimony from or answers to questions that were posed to them during for dire. So, again, all of the evidence that Mr. Lizcano cites now is not clear and convincing evidence. Also, since they aren't able to overcome that, they also cannot show that Mr. Lizcano was incompetent and so can't show that they meet the prejudice prong of Strickland. As far as deficiency, they haven't been able to show that trial counsel did not act with strategy and also have not counter-argued that the investigation undertaken by counsel was lacking, I think, the, again, extent of the investigation that was conducted at that time, although Ms. Nathan had said she felt it was insufficient, is contradicted by even the testimony of, I believe, I'm sorry, I can't remember if it was Dr. Martinez, but who had said it was one of the most complete investigations he had ever seen. And this was at the state habeas hearing in 2012. So, with the lack of clear and convincing evidence to overcome the competency finding by the state habeas court, as well as not being able to overcome the finding of fact that strategy was used by trial counsel, Mr. Lizcano fails to demonstrate that both prongs of Strickland have been met and also, therefore, cannot show that the CCA unreasonably determined that Mr. Lizcano was, did not meet Strickland. And they have presented nothing to overcome this. If there are no more questions, I will yield the rest of my time. Thank you very much. Thank you, Your Honor. Just three points. First, to clarify for the record, Dr. Lorente's state habeas testimony in which he recognized the problems with retrospective opinions, I'm sorry, I forget how my opponent phrased it, that testimony was very specific to a single test that is used in the adaptive deficit analysis for a diagnosis of intellectual disability. As to that test, Dr. Lorente acknowledged that that one test is not designed to be applied retroactively, but that he did it out of abundance of caution. It was only one of many tests he performed, only one of many sources he relied on. As far as, I believe I heard my opponent say that retrospective opinions on incompetency are not permissible, and first, Dr. Lorente definitely never said that, and both the Supreme Court and this Court have recognized that retrospective opinions on incompetency are indeed permissible, even after a significant period of time has passed, as long as there is sufficient evidence available from the time of trial, and Dr. Lorente's retrospective opinion on incompetency was based largely on evidence that was available at the time of trial. Second, as to Dr. Martinez's opinion, my opponent talked about the Rule 705 hearing, and I just want to say that his counsel never prepared him, never educated him as to the Texas competency factors. Counsel knew that Dr. Martinez was a clinical evaluator and lacked forensic experience when they retained him, and counsel have a duty to properly prepare their own experts or to find a qualified expert. So, again, to the extent counsel doubted the strength of Martinez's opinion, it was incumbent on counsel to find a different evaluator. Finally, my opponent cited to the extensive investigation that trial counsel conducted to prove intellectual disability, but, again, the Supreme Court has made clear that the fact that counsel conducts some investigation does not necessarily render their strategic decisions reasonable. In Rompila v. Beard, for example, a habeas petitioner had claimed that his capital counsel ineffectively investigated mitigating evidence, and the state court had denied relief, pointing to the fact that counsel undertook a quite robust investigation, including hiring three mental health experts, and the state court said that the extent of the investigation that was performed insulated counsel from any inquiry as to investigation that was not undertaken. But the Supreme Court held that was a reasonable application of Strickland because counsel failed to obtain readily available evidence that they knew the prosecution would be relying on at trial. And here, counsel failed to obtain the report and underlying data that they knew Dr. Flynn would be relying on at a competency trial. So whatever investigation counsel did perform does not justify the strategic decision that they made in withdrawing and abandoning competency proceedings when they had not completed an objectively reasonable investigation into the issue of competency before making that decision. If there are no further questions. MR. GARRETT. Thank you, Ms. Thompson. In your case, both of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow.